2-11-0852 Harmony's Corner v. Kathie Crumpton Good morning, if it may please the court. This is the type of case that involves manifest weight, horrible tunnel, an aggravation of... What's your name? Nadine Noy, I'm sorry, for Harmony's Corner. And some people have said that it would be easier for me to invite the judges down to the lake front and say, if I make it over to Michigan State by swimming, my burden would be easier than the one I have before me today. But I don't agree. Basically what it comes down to is, we'll start with accident. There are three basic forms to find the appropriate manifestation date for a repetitive trauma claim. We have the reasonable person. When was it plainly apparent to a reasonable person? But then also you can choose the first date of treatment. Thirdly, when did Petitioner have to stop working? When did her condition actually come to the point where she could no longer continue to work? In this case, the arbitrator chose to decide to agree with Petitioner's statements. The commission did not change anything about the arbitrator's decision. And the circuit court stated, and not in the order, that if they'd had the preponderance of the evidence, they have a lot of things they would like to do with this. However, manifest weight is such a high standard that they don't feel that they had an ability to do that. Counsel, the arbitrator set the manifestation date on March 17, 2009, correct? Yes. That was the date the claimant first sought medical attention for the bilateral risk symptoms, the first date a diagnosis was made, and the first date treatment was prescribed. So what's wrong with that? Well, was it actually the first date that she sought treatment? Because Petitioner's own testimony says that she had attempted to seek treatment several times prior to that, several years. But she couldn't. She had no insurance. She had a hard time finding a doctor, right? But then she says that her braces were prescribed by a doctor. And she herself states that she had been wearing those braces at least seven years prior to her alleged date of manifestation. So her own testimony is inconsistent in a manner that basically I don't think the arbitrator's taking it as a whole. Reading the record as a whole supports the outcome. Well, aren't Oscar Meyer, there's cases that say just because somebody has some idea that maybe they're suffering from a problem, that in and of itself doesn't determine definitive manifestation date. It can be when the person seeks treatment and first is informed of the fact that this condition is work-related. Exactly. Aren't there cases that say that? Yes, there are. So these things that she knew she had some problems and she was trying to self-treat, why does that change the manifestation date? Well, that's the thing. Did she self-treat? She herself states that seven years ago she wanted group insurance because she knew she had carpal tunnel. Then we go back to the fact that she says the doctor prescribed her a brace. That was also seven years ago. Then during trial she testifies that, in fact, she wanted to file a work comp claim two years prior to her date of manifestation. So that would clearly show. Any evidence at all, any physician or anyone else in the treating arts practice told her that she had carpal tunnel syndrome prior to March 17, 2009? Not on the record except for the fact that she said that the doctor prescribed her braces before and that she was well aware she had carpal tunnel at least seven years prior to her date of manifestation. That is in her own testimony. Okay. You have a number of other issues, I think, right? Yes, we do. We'll move on to the next one. Petitioner then said that notice was provided appropriately because she provided her employer notice by saying that I went to the VA hospital, they diagnosed me with carpal tunnel, and they told me I should go see an orthopedic doctor. Well, apparently she'd been wearing these braces since she started working there. It was known that she had carpal tunnel or an issue with her arms because she was wearing the braces. The owner of the company said the first time that she knew that there was a workers compensation place was July 3, 2009 when she received the application that was filed. Prior to that, if an employer is aware that an issue is there, that the employee has some sort of medical issue, White, the case of White clearly states that you still have to actually say that it's work-related. Now, this is where Petitioner's testimony comes in again to confuse the issue because apparently she said that two years prior to her manifestation date she wanted to file a work comp claim but was told no. At the same time, she wanted to receive group insurance, but then she says the first time she gave appropriate notice in all its manifestations was right after the VA hospital visit. Well, let me ask you this. Couldn't the Commission choose to believe her? The Commission could choose to believe her. And they did, obviously, didn't they? Yes. And then the question is, is that a rational conclusion based on all the other evidence in the record? Well, does credibility have to be irrational? I mean, she testifies this, the employer says she didn't tell me this, and they believe we can claim it. Yes, and Petitioner's own testimony is inconsistent on its face. So, you know, that's the thing. So this is how it works. Petitioner says that I manifested this accident on March 17, 2009, because that's a good date. I like that date. I told my employer about it, and then I get the requisite opinion that says part and parcel of my job duties over the past 12 years results in the carpal tunnel. I'm done. Why would I even be here? I mean, that's just that simple, counsel. Why is that not rational? Why is that not reasonable? Look at the whole record. Look at her own inconsistencies in her testimony. Did she or did she not? Was she not aware she had carpal tunnel seven years prior? Her own testimony says she did. Did she or did she not already tell the employer she wanted to file a work comp claim two years prior to a date of manifestation? Well, whose responsibility is it to weigh questions of credibility, this Court or the Commission? The Commission. And then we get to the point of what is the manifest weight. How much inconsistencies do we have to have in the record before we get to the manifest weight, before we're not just taking a blind eye to all the problems in the case and just saying, well, if she says so, we're just going to go with that? That's fine. Is that what her opinion was? She said so, and that's the end of the bargain? Well, she said she was first made aware of her carpal tunnel and first knew of the appropriate manifestation date is March 17, 2009. She told her employer about it, and she has the requisite causal relation opinion, and that's it. We're not going to look at all the other inconsistencies in the file. What about the bonuses, the tips? What's your position on that? The tips is an interesting situation. The tips were calculated by the arbitrator as the highest amount possible. My client advised that the amount that was listed to be the weekly take for the rest for the bar each week was about three times a year they would make that amount of tips. So three times a year, the 10 percent would equate what the arbitrator chose to use as the tips for the entire portion of the average weekly wage for every single week she had. And Petitioner produced wage stubs from 2009 that would actually assist in further determining what would be the appropriate average weekly wage, but those were not allowed in evidence by the arbitrator. So, again, there was conflicting evidence on that, and the Commission chose the highest amount possible that they could possibly choose. Then we have the additional issue that Petitioner herself testified that two years prior to March 17, 2009, her condition was so bad that any activity of daily living was impossible for her. She couldn't squeeze a shampoo bottle. She couldn't do her laundry. She had to have friends do all of these activities for her. That severs the causal relation there already. At that point, her condition was to the point where she couldn't do any activities of daily living. You can't even aggravate it anymore after that point pursuant to case law. That's an additional issue regarding causal relation. And I will leave it at that. I will choose the rest for rebuttal. Thank you. Counsel, please. Thank you. May it please the Court again. Good morning, Counsel. Manifest wake case, I think it's pretty clean. My brief is short, so you didn't have to read a lot. I don't think they have any basis for overturning anything here. In notice or the accident date itself, they stipulate it to accident. So manifestation date is really an issue that shouldn't even be before your Court. So please affirm she needs her surgery. Thank you very much. Unless you have any questions, I apologize. Thank you. Any rebuttals? Just a quick one. Counsel is advising that we stipulated to accident, and the arbitrator's exhibit number one is the stipulation sheet, which clearly says that we disputed accident as well. Thank you. The Court will take the matter under review for disposition.